FILED IN Washtenaw County Trial Court; 9/15/2023 12:47 PM

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW**

23-001174-CP

JACKSON SCHLEUNING, on behalf of
himself and others similarly situated,

        Plaintiff,

v.

BARTONBROOK INVESTMENTS, LLC,
a Michigan limited liability company,

        Defendant.

Case No.: 23-        -CP

Hon.  JUDGE TIMOTHY P. CONNORS

/

Oscar A. Rodriguez (P73413)
HOOPER HATHAWAY, P.C.
126 South Main Street
Ann Arbor, MI 48104
(734) 662-4426
orod@hooperhathaway.com
Attorney for Plaintiff

A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the Complaint has been previously filed in this Court, where it was given case number 22-000984-CP and assigned to Judge Timothy P. Connors. The action remains pending.

/

## COMPLAINT

    NOW COMES the above-named Plaintiff JACKSON SCHLEUNING ("Mr. Schleuning"), by and through his attorneys, Hooper Hathaway, P.C, and for his Complaint against the above-named Defendant BARTONBROOK INVESTMENTS, LLC ("Bartonbrook"), states as follows:

### PARTIES, JURISDICTION AND VENUE

    1.    Mr. Schleuning is an individual who resides in Apollo Beach, Florida.

    2.    Bartonbrook is a Michigan limited liability company, located in Ann Arbor, Michigan.

    3.    Venue is appropriate in this Court because there is more than $25,000 in controversy and Defendant regularly conducts business in Washtenaw County.

## FACTUAL BACKGROUND

4.      On or about October 1, 2018, Mr. Schleuning and eleven other tenants (hereinafter the Tenants) entered into a residential lease agreement (see *Residential Lease* attached as **Exhibit 1**) with Bartonbrook to rent a multiple-unit dwelling located at 808 Tappan Street in Ann Arbor, Michigan (the Leased Premises) for a term of less than twelve months commencing on September 1, 2019 and ending on August 20, 2020 (the Lease).

5.      Pursuant to the Lease, the Tenants paid Bartonbrook a security deposit of twenty-thousand four-hundred dollars ($20,400).

6.      Paragraph 3 of the Lease provides, in pertinent part, that the Tenants may select one person "who shall act as the agent and representative of all other persons who have signed this lease or acquired legal rights of occupancy under it."

7.      Mr. Schleuning is the person chosen as the agent to represent himself and the other tenants regarding the security deposit and all other rights associated with the tenancy.

## COUNT 1
### LANDLORD AND TENANT RELATIONSHIPS ACT – VIOLATION #1:
### FAILURE TO PROVIDE THE TENANTS WITH PROPER NOTICE OF DAMAGES

8.      Plaintiff incorporates the above paragraphs as though fully restated herein.

9.      The Landlord and Tenant Relationship Act [MCL 554.601 et seq] (hereinafter the LTRA) regulates the payment, repayment, and use of residential security deposits.  It is primarily aimed to protect the tenant from the landlord surreptitiously usurping substantial sums held to secure the performance of conditions under the lease [see *Stutelberg v Practical Management Co,* 70 Mich. App. 325, 338; 245 N.W.2d 737 (1976), *lv den* 398 Mich. 804 (1976)].

10.      Section 9 of the LTRA [MCL 554.609] provides, in pertinent part, that *"...* **the landlord shall mail to the tenant, within 30 days after the termination of occupancy, an**

2

**itemized list of damages claimed for which the security deposit may be used**...”

11.    Section 10 of the LTRA [MCL 554.610] provides, in pertinent part, that **“(f)ailure by the landlord to comply with the notice of damages requirement constitutes agreement by the landlord that no damages are due, and he shall remit to the tenant immediately the full security deposit**.”

12.    Bartonbrook did not mail the Tenants an itemized list of damages claimed for which the security deposit may be used.  Instead, Bartonbrook mailed Mr. Schleuning an itemized list of damages claimed for which the security deposit may not be used, including claims for late payment fees, returned check fees, trash tickets and removal, dumpster rental, and security guards (see *Security Deposit Settlement* attached as **Exhibit 2**).

13.    Despite its failure to comply with the notice of damages requirement set forth in Section 9 of the LTRA, and its agreement therefore that no damages were due, Bartonbrook failed and refused to immediately remit the full security deposit to the Tenants and wrongfully retained $8,625.53.

WHEREFORE, on Count 1, pursuant to MCL 554.610, Mr. Schleuning asks this Honorable Court for a money judgment against Bartonbrook for $8,625.53, representing that portion of the security deposit Bartonbrook failed and refused to remit to the Tenants, together with reasonable attorney’s fees and costs.

### COUNT 2
### LANDLORD AND TENANT RELATIONSHIPS ACT – VIOLATION #2:
### RETAINING THE TENANTS’ SECURITY DEPOSIT WITHOUT
### FIRST OBTAINING A MONEY JUDGMENT FOR THE DISPUTED AMOUNT

14.    Plaintiff incorporates the above paragraphs as though fully restated herein.

15.    Subsection (1) of section 13 of the LTRA [MCL 554.613(1)] provides, in pertinent part, that *“*... **landlord shall not be entitled to retain any portion of a security deposit for**

**damages claimed unless he has first obtained a money judgment for the disputed amount**…"

unless one of the following four exceptions apply.

    A.  The tenant has failed to provide a forwarding address.

    B.  The tenant has failed to respond to the notice of damages.

    C.  The parties have agreed in writing to the disposition of the deposit claimed by the landlord.

    D.  The amount claimed is entirely based upon accrued and unpaid rent equal to the actual rent for any full rental period or portion thereof during which the tenant has had actual or constructive possession of the premises.

16.    Bartonbrook was not entitled to retain any portion of the Tenants' security deposit because it did not first obtain a money judgment for the disputed amount and:

    A.  The Tenants provided Bartonbrook a forwarding address.

    B.  The Tenants responded to Bartonbrook's improper notice of damages.

    C.  The parties did not agree in writing to the disposition of the deposit claimed by Bartonbrook.

    D.  The amount claimed by Bartonbrook was not entirely based upon accrued and unpaid rent equal to the actual rent for any full rental period or portion thereof during which the tenant has had actual or constructive possession of the premises.

17.    Subsection (2) of Section 13 of the LTRA [MCL 554.613(2)] provides, in pertinent part, that *"(f)*ailure of the landlord to comply fully with (Section 13) constitutes waiver of all claimed damages and makes him liable to the tenant for double the amount of the security deposit retained."

18.    By retaining the full amount of the Tenants' security deposit without first obtaining a money judgment for the disputed amount Bartonbrook failed to fully comply with subsection (1) of section 13 of the LTRA.

WHEREFORE, on Count 2, pursuant to MCL 554.613(2), Mr. Schleuning asks this

Honorable Court for a money judgment against Bartonbrook for $17,251.06, representing double the amount of the security deposit Bartonbrook wrongfully retained, together with reasonable attorney's fees and costs.

### COUNT 3
### LANDLORD AND TENANT RELATIONSHIPS ACT – VIOLATION #3:
### USING SECURITY DEPOSIT FOR IMPROPER PURPOSES

19.     Plaintiff incorporates the above paragraphs as though fully restated herein.

20.     Section 7 of the LTRA [MCL 554.607] provides, in pertinent part, that "… **a security deposit may only be used for the following purposes: (a) Reimburse the landlord for actual damages to the rental unit… that are the direct result of conduct not reasonably expected in the normal course of habitation of a dwelling; and (b) Pay the landlord for all rent in arrearage under the rental agreement, rent due for premature termination of the rental agreement by the tenant and for utility bills not paid by the tenant**."

21.     There were no actual damages to the Leased Premises that were the direct result of conduct not reasonably expected in the normal course of habitation of the dwelling.

22.     Bartonbrook used the Tenants' security deposit for purposes not authorized by Section 7 of the LTRA.  Specifically, pursuant to paragraph 7 of the Lease, Bartonbrook applied the Tenants' security deposit first to satisfy $400 in "unpaid late fees", $1090 for "trash out and dumpster" charges, $556.87 for "2019 Football Security", $260 for "trash ticket", $25 for "NSF fee", and $25 for "unreturned parking permit".

WHEREFORE, on Count 3, Mr. Schleuning asks this Honorable Court for a money judgment against Bartonbrook for $2,356.87, representing the amount of the security deposit Bartonbrook used for improper purposes, together with reasonable attorney's fees and costs.

<u>COUNT 4</u>
<u>REGULATION OF COLLECTION PRACTICES ACT – VIOLATION #1:</u>
<u>MAKING FALSE AND DECEPTIVE STATEMENTS AND CLAIMS</u>
<u>IN COMMUNICATIONS TO COLLECT DEBTS FROM THE TENANTS</u>

23.    Plaintiff incorporates the above paragraphs as though fully restated herein.

24.    The Regulation of Collection Practices Act [MCL 445.251 et seq] (hereinafter, the RCPA) regulates the collection practices of certain persons and provides penalties for engaging in prohibited acts.

25.    Section 1 of the RCPA [MCL 445.251] provides, in pertinent part, that **"(g) "regulated person" means a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency …"**

26.    Subsection (1) of section 7 of the RCPA [MCL 445.257(1)] provides in pertinent part that **"(a) person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of this act may bring an action for damages or other equitable relief**."

27.    Subsection (2) of section 7 of the RCPA [MCL 445.257(2)] provides that **"In an action brought pursuant to subsection (1), if the court finds for the petitioner, recovery shall be in the amount of actual damages or $50.00, whichever is greater. If the court finds that the method, act, or practice was a willful violation, the court may assess a civil fine of not less than 3 times the actual damages, or $150.00, whichever is greater, and shall award reasonable attorney's fees and court costs incurred in connection with the action**."

28.    Section 2 of the RCPA [MCL 445.252] provides, in pertinent part, that **"A regulated person shall not commit 1 or more of the following acts: … (e) making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt …"**

29.     Bartonbrook engaged in confined collection activities which were directly related to the operation of a business other than that of a collection agency.

30.     Bartonbrook's collection activities included willfully inaccurate, misleading, untrue, and deceptive statements or claims in its communications with the Tenants, including:

   A.  In paragraph 3 of the Lease, Bartonbrook falsely claimed the Tenants' security deposit could be used for "… **fees and costs of services that are the responsibility of the Tenant and not paid by Tenant.**"

   B.  In paragraph 9 of the Lease, Bartonbrook falsely claimed the Tenants' security deposit could be used for "**late fees**".

   C.  In its notice of damages, Bartonbrook falsely claimed that, in accordance with "**the Security Deposit Law**", $2,356.87 could be deducted from the Tenants' security deposit for "late fees", "trash out and dumpster" charges, "2019 Football Security", "trash ticket", "NSF fee", and "unreturned parking permit".

32.     The Tenants suffered injury, loss, and damage, as the result of Bartonbrook including willfully inaccurate, misleading, untrue, and deceptive statements or claims in its communications with the Tenants.

33.     Bartonbrook collected $2,356.87 from the Tenants by making willfully inaccurate, misleading, untrue, and deceptive statements or claims in its communications with the Tenants.

WHEREFORE, on Count 4, pursuant to MCL 445.257(2), Mr. Schleuning asks this Honorable Court for a money judgment against Bartonbrook for $2,356.87, representing the actual damages incurred as the result of Bartonbrook including willfully inaccurate, misleading, untrue, and deceptive statements or claims in its communications with the Tenants, and to assess a civil fine against Bartonbrook for not less than $7,070.61, representing 3 times the actual damages

7

incurred, together with reasonable attorney's fees and costs.

**COUNT 5**
**REGULATION OF COLLECTION PRACTICES ACT – VIOLATION #2**
**MISREPRESENTING TO THE TENANTS**
**THE LEGAL RIGHTS OF THE CREDITOR**

34.    Plaintiff incorporates the above paragraphs as though fully restated herein.

35.    Section 2 of the RCPA [MCL 445.252] provides, in pertinent part, that **"A regulated person shall not commit 1 or more of the following acts: … (f) misrepresenting in a communication with a debtor … (ii) the legal rights of the creditor or debtor …"**

36.    In its communications with the Tenants, Bartonbrook misrepresented its legal rights to use the Tenants' security deposit for improper purposes, including:

A.    In paragraph 3 of the Lease, Bartonbrook falsely claimed it had the legal right to use the Tenants' security deposit for "… **fees and costs of services that are the responsibility of the Tenant and not paid by Tenant.**"

B.    In paragraph 9 of the Lease, Bartonbrook falsely claimed it had the legal right to use the Tenants' security deposit for "**late fees**".

C.    In its notice of damages, Bartonbrook falsely claimed that, in accordance with "**the Security Deposit Law**", $2,356.87 could be deducted from the Tenants' security deposit for "late fees", "trash out and dumpster" charges, "2019 Football Security", "trash ticket", "NSF fee", and "unreturned parking permit".

34.    The Tenants suffered injury, loss, and damage, as the result of Bartonbrook misrepresenting its legal rights to use the Tenants' security deposit for improper purposes.

35.    Bartonbrook collected $2,356.87 from the Tenants by mispresenting its legal rights to use the Tenants' security deposit for improper purposes.

WHEREFORE, on Count 5, pursuant to MCL 445.257(2), Mr. Schleuning asks this

Honorable Court for a money judgment against Bartonbrook for $2,356.87, representing the actual damages incurred as the result of Bartonbrook misrepresenting its legal rights to use the Tenants' security deposit for improper purposes, and to assess a civil fine against Bartonbrook for not less than $7,070.61, representing 3 times the actual damages incurred, together with reasonable attorney's fees and costs.

**COUNT 6**
**MICHIGAN CONSUMER PROTECTION ACT – VIOLATION #1:**
**COLLECTING DEBTS FROM THE TENANTS BY**
**CAUSING A PROBABILITY OF CONFUSION AS TO LEGAL RIGHTS**
**TO RETAIN AND CONVERT SECURITY DEPOSIT**

40.     Plaintiff incorporates the above paragraphs as though fully restated herein.

41.     The Michigan Consumer Protection Act [MCL 445.901 et seq] (hereinafter the MCPA) is a remedial statute that requires the disclosure, maintenance, and verification of certain information for consumer protection.

42.     Subsection 1 of Section 11 of the MCPA [MCL 445.911(1)] provides, in pertinent part, that **"Whether or not a person seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following: (a) obtain a declaratory judgment that a method, act, or practice is unlawful under section 3. (b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice that is unlawful under section 3**."

43.     Subsection 2 of Section 11 of the MCPA [MCL 445.911(2)] provides, in pertinent part, that **"… a person who suffers a loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees**."

44.     Subsection (n) of subsection 1 of Section 3 of the MCPA [MCL 445.903(1)(n)]

provides, in pertinent part, that unfair, unconscionable, or deceptive methods, acts or practices are defined to include **"(c)ausing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction"**.

45.     To collect debts allegedly owed by the Tenants, Bartonbrook engaged in unfair, unconscionable, and deceptive acts and practices by causing a probability of confusion or of misunderstanding as to Bartonbrook's legal rights to retain and convert the Tenants's security deposit for its own use.

46.     Bartonbrook caused a probability of confusion or misunderstanding as to its legal rights to retain and convert the Tenants' security deposit for its own use by making false claims in its communications with the Tenants, including:

A.  In paragraph 3 of the Lease, Bartonbrook falsely claimed it had the legal right to use the Tenants' security deposit for "… **fees and costs of services that are the responsibility of the Tenant and not paid by Tenant.**"

B.  In paragraph 9 of the Lease, Bartonbrook falsely claimed it had the legal right to use the Tenants' security deposit for "**late fees**".

C.  In its notice of damages, Bartonbrook falsely claimed that, in accordance with "**the Security Deposit Law**", $2,356.87 could be deducted from the Tenants' security deposit for "late fees", "trash out and dumpster" charges, "2019 Football Security", "trash ticket", "NSF fee", and "unreturned parking permit".

46.     Bartonbrook also caused a probability of confusion or misunderstanding as to its legal rights to retain and convert the Tenants' security deposit for its own use by wrongfully retaining and converting the Tenants' security deposit for its own use.

47.     The Tenants suffered the loss of a portion of their security deposit as the result of

Bartonbrook unlawfully collecting alleged debts from them by causing a probability of confusion or misunderstanding as to its legal rights to retain and convert the Tenants' security deposit for its own use.

48.     Upon information and belief, Bartonbrook is currently holding approximately 25 security deposits totaling more than $420,000 and owned by at least 250 Michigan consumers, all of whom are subject to Bartonbrook's unfair, unconscionable, and deceptive acts and practices of unlawfully collecting debts from consumers by causing a probability of confusion or misunderstanding as to its legal rights to retain and convert their security deposit for its own use.

49.     Upon information and belief, Bartonbrook is currently attempting to obtain approximately 25 additional security deposits totaling more than $420,000 from at least 250 additional Michigan consumers, all of whom will be subject to Bartonbrook's unfair, unconscionable, and deceptive acts and practices of unlawfully collecting debts from consumers by causing a probability of confusion or misunderstanding as to its legal rights to retain and convert their security deposit for its own use.

WHEREFORE, on Count 6:

A. Pursuant to MCL 445.911(1), Mr. Schleuning asks this Honorable Court to (1) enter a declaratory judgment declaring that Bartonbrook's practice of collecting debts from consumers by causing a probability of confusion or of misunderstanding as to Bartonbrook's legal rights to retain and convert security deposits for its own use for any purposes other than those set forth in the Landlord and Tenant Relationships Act is unlawful and violates subsection (n) of subsection 1 of Section 3 of the Michigan Consumer Protection Act [MCL 445.903(1)(n)], and (2) enter an order commanding Bartonbrook to notify all consumers who own security deposits currently being held by

11

Bartonbrook that, notwithstanding any lease provisions or notices or other communications from Bartonbrook to the contrary, Bartonbrook does not have the legal right to retain and convert their security deposits for its own use for any purposes other than those set forth in the Landlord and Tenant Relationships Act, and (3) enter an order enjoining Bartonbrook from communicating in any future consumer transactions that it has the legal right to retain and convert their security deposits for its own use for any purposes other than those set forth in the Landlord and Tenant Relationships Act, and enjoining Bartonbrook in any future consumer transactions from retaining and converting security deposits for its own use for any purposes other than those set forth in the Landlord and Tenant Relationships Act, and

**B.** Pursuant to MCL 445.911(2), Mr. Schleuning asks this Honorable Court for a money judgment against Bartonbrook for $2,356.87, representing the actual damages incurred as the result of Bartonbrook causing a probability of confusion or misunderstanding as to its legal rights to use the Tenants' security deposit for improper purposes, together with reasonable attorney's fees and costs.

### COUNT 7
### MICHIGAN CONSUMER PROTECTION ACT – VIOLATION #2:
### FAILING TO PROMPTLY RESTORE
### THE TENANTS' SECURITY DEPOSIT

50.     Plaintiff incorporates the above paragraphs as though fully restated herein.

51.     Subsection (u) of subsection 1 of Section 3 of the MCPA [MCL 445.903(1)(u)] provides, in pertinent part, that unfair, unconscionable, or deceptive methods, acts or practices are defined to include **"(f)ailing, in a consumer transaction that is… terminated in accordance with an agreement…to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment…"**

52.     The Lease was a consumer transaction that was terminated in accordance with its terms.

53.     Upon termination of the Lease, the Tenants were entitled to have their security deposit promptly restored.

54.     Bartonbrook failed and refused to promptly restore the Tenants' security deposit.

55.     The Tenants suffered the loss of a portion of their security deposit as the result of Bartonbrook's failure and refusal to promptly restore their security deposit.

WHEREFORE, on Count 7, pursuant to MCL 445.911(2), Mr. Schleuning asks this Honorable Court for a money judgment against Bartonbrook for $8,625.5, representing the actual damages incurred as the result of Bartonbrook's failure to promptly restore the Tenants' security deposit, together with reasonable attorney's fees and costs.

**COUNT 8**
**CONVERSION OF THE TENANTS' SECURITY DEPOSIT**

56.     Plaintiff incorporates the above paragraphs as though fully restated herein.

57.     Section 2919a of the Revised Judicature Act [MCL 600.2919a] (hereinafter the RJA) provides, in pertinent part that **"(1) A person damaged as a result of … the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees: (a) Another person's stealing or embezzling property or converting property to the other person's own use …** (2) **The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise."**

58.     Section 5 of the LTRA [MCL 554.605] provides, in pertinent part, that "…**the security deposit is considered the lawful property of the tenant until the landlord establishes a right to the deposit or portions thereof**…"

59.     Bartonbrook had a duty under section 9 and section 13 of the LTRA [MCL 554.609,

MCL 554.613] to promptly return the full security deposit to the Tenants.

60.     Bartonbrook had a duty under subsection (u) of subsection 1 of section 3 of the MCPA [MCL 445.903(1)(u)] to promptly return the full security deposit to the Tenants.

61.     Bartonbrook failed and refused to promptly return the full security deposit to the Tenants.

62.     Instead of returning the full security deposit to the Tenants, Bartonbrook converted a portion of the security deposit for its own use.

WHEREFORE on Count 8, pursuant to MCL 600.2919(a), Mr. Schleuning asks this Honorable Court for a monetary judgment against Bartonbrook for $25,876.59, representing three times the amount of the actual damages incurred by Tenants, together with reasonable attorney's fees and costs.

**COUNT 9**
**LANDLORD AND TENANT RELATIONSHIPS ACT – CLASS ACTION CLAIM #1:**
**FAILURE TO PROVIDE CONSUMERS WITH PROPER NOTICE OF DAMAGES**

63.     Plaintiff incorporates the above paragraphs as though fully restated herein.

64.     Section 9 of the LTRA [MCL 554.609] provides, in pertinent part, that *"...* **the landlord shall mail to the tenant, within 30 days after the termination of occupancy, an itemized list of damages claimed for which the security deposit may be used***...*"

65.     Section 10 of the LTRA [MCL 554.610] provides, in pertinent part, that **"(f)ailure by the landlord to comply with the notice of damages requirement constitutes agreement by the landlord that no damages are due, and he shall remit to the tenant immediately the full security deposit**."

66.     Upon information and belief, Bartonbrook did not mail an itemized list of damages claimed for which the security deposit may be used to more than 1,000 consumers over the last 6

years (hereinafter the Impacted Consumers).   Instead, Bartonbrook mailed the Impacted Consumers notices of damages that included claims for which the security deposit may not be used, including claims for late payment fees, returned check fees, unreturned key fees, cleaning costs, labor, tire replacement, furniture removal, parking passes, dumpsters, trash removal, security guards for football games, citations, fire alarms, and subletting.

67.    Upon information and belief, despite its failure to comply with the notice of damages requirement set forth in Section 9 of the LTRA, and its agreement therefore that no damages were due, Bartonbook failed to immediately remit the full security deposit to the Impacted Consumers.

68.    The class of Impacted Consumers to whom Bartonbrook has failed to provide proper notices of damages is so numerous that joinder of all members is impractical.

69.    There are questions of law and fact common to members of the class that predominate over questions affecting only individual members.

70.    Mr. Schleuning' claims against Bartonbrook are typical of the claims of the class.

71.    Mr. Schleuning will fairly and adequately assert and protect the interests of the class having competent counsel to represent them.

72.    The maintenance of the claims as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

WHEREFORE, on Count 9, pursuant to MCL 554.610, Mr. Schleuning on his own behalf and the class represented, asks this Honorable Court to certify the class represented, order that notice be provided to class members, and award a money judgment equal to all actual damages incurred as the result of Bartonbrook's failure to provide proper notices of damages to Impacted Consumers and immediately remit the full amount of their security deposits to them.

**COUNT 10**
**LANDLORD AND TENANT RELATIONSHIPS ACT – CLASS ACTION CLAIM #2:**
**RETAINING CONSUMERS' SECURITY DEPOSITS WITHOUT**
**FIRST OBTAINING A MONEY JUDGMENT FOR DISPUTED AMOUNTS**

73.     Plaintiff incorporates the above paragraphs as though fully restated herein.

74.     Subsection (1) of section 13 of the LTRA [MCL 554.613(1)] provides, in pertinent

part, that *"…* **landlord shall not be entitled to retain any portion of a security deposit for**

**damages claimed unless he has first obtained a money judgment for the disputed amount***…"*

unless one of the following four exceptions apply.

    A.  The tenant has failed to provide a forwarding address.

    B.  The tenant has failed to respond to the notice of damages.

    C.  The parties have agreed in writing to the disposition of the deposit claimed by the landlord.

    D.  The amount claimed is entirely based upon accrued and unpaid rent equal to the actual rent for any full rental period or portion thereof during which the tenant has had actual or constructive possession of the premises.

75.     Upon information and belief, Bartonbrook was not entitled to retain any portion of

the Impacted Consumers' security deposits because it did not first obtain a money judgment for he

disputed amounts and:

    A.  The Impacted Consumers provided Bartonbrook forwarding addresses.

    B.  The Impacted Consumers responded to Bartonbrook's improper notice of damages.

    C.  The parties did not agree in writing to the disposition of the deposit claimed by Bartonbrook.

    D.  The amounts claimed by Bartonbrook were not entirely based upon accrued and unpaid rent equal to the actual rent for any full rental period or portion thereof during which the tenant has had actual or constructive possession of the premises.

76.     Subsection (2) of Section 13 of the LTRA [MCL 554.613(2)] provides, in pertinent

part, that *"(f***)ailure of the landlord to comply fully with (Section 13) constitutes waiver of all**

16

**claimed damages and makes him liable to the tenant for double the amount of the security deposit retained.**"

77.     By retaining portions of the Impacted Consumers security deposits without first obtaining a money judgment for the disputed amounts Bartonbrook failed to fully comply with subsection (1) of Section 13 of the LTRA.

78.     The class of Impacted Consumers from whom Bartonbrook has wrongfully retained security deposits without first obtaining a money judgment is so numerous that joinder of all members is impractical.

79.     There are questions of law and fact common to members of the class that predominate over questions affecting only individual members.

80.     Mr. Schleuning' claims against Bartonbrook are typical of the claims of the class.

81.     Mr. Schleuning will fairly and adequately assert and protect the interests of the class having competent counsel to represent them.

82.     The maintenance of the claims as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

WHEREFORE, on Count 10, pursuant to MCL 554.613(2), Mr. Schleuning on his own behalf and the class represented, asks this Honorable Court to certify the class represented, order that notice be provided to class members, and award a money judgment equal to double the amount of the Impacted Consumers' security deposits that Bartonbrook wrongfully without first obtaining a money judgment.

### COUNT 11
### LANDLORD AND TENANT RELATIONSHIPS ACT – CLASS ACTION CLAIM #3: USING CONSUMERS' SECURITY DEPOSITS FOR IMPROPER PURPOSES

83.     Plaintiff incorporates the above paragraphs as though fully restated herein.

84.   Section 7 of the LTRA [MCL 554.607] provides, in pertinent part, that "… **a security deposit may only be used for the following purposes: (a) Reimburse the landlord for actual damages to the rental unit… that are the direct result of conduct not reasonably expected in the normal course of habitation of a dwelling; and (b) Pay the landlord for all rent in arrearage under the rental agreement, rent due for premature termination of the rental agreement by the tenant and for utility bills not paid by the tenant**."

85.   Upon information and belief, Bartonbrook used the Impacted Consumers' security deposits for purposes not authorized by Section 7 of the LTRA, including claims for late payment fees, returned check fees, unreturned key fees, cleaning costs, labor, tire replacement, furniture removal, parking passes, dumpsters, trash removal, security guards for football games, citations, fire alarms, and subletting.

86.   The class of Impacted Consumers from whom Bartonbrook has wrongfully used their security deposits for improper purposes is so numerous that joinder of all members is impractical.

87.   There are questions of law and fact common to members of the class that predominate over questions affecting only individual members.

88.   Mr. Schleuning' claims against Bartonbrook are typical of the claims of the class.

89.   Mr. Schleuning will fairly and adequately assert and protect the interests of the class having competent counsel to represent them.

90.   The maintenance of the claims as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

WHEREFORE, on Count 11, pursuant to MCL 554.613(2), Mr. Schleuning on his own behalf and the class represented, asks this Honorable Court to certify the class represented, order

18

that notice be provided to class members, and award a money judgment equal to the amount of the Impacted Consumers' security deposits that Bartonbrook wrongfully used for improper purposes.

**COUNT 12**
**REGULATION OF COLLECTION PRACTICES ACT – CLASS ACTION CLAIM #4:**
**MAKING FALSE AND DECEPTIVE STATEMENTS AND CLAIMS**
**IN COMMUNICATIONS TO COLLECT DEBTS FROM CONSUMERS**

91.     Plaintiff incorporates the above paragraphs as though fully restated herein.

92.     Subsection (1) of section 7 of the RCPA [MCL 445.257(1)] provides in pertinent part that **"(a) person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of this act may bring an action for damages or other equitable relief**."

93.     Subsection (2) of section 7 of the RCPA [MCL 445.257(2)] provides that **"In an action brought pursuant to subsection (1), if the court finds for the petitioner, recovery shall be in the amount of actual damages or $50.00, whichever is greater. If the court finds that the method, act, or practice was a willful violation, the court may assess a civil fine of not less than 3 times the actual damages, or $150.00, whichever is greater, and shall award reasonable attorney's fees and court costs incurred in connection with the action.**"

94.     Section 2 of the RCPA [MCL 445.252] provides, in pertinent part, that **"A regulated person shall not commit 1 or more of the following acts: … (e) making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt …**"

95.     Upon information and belief, Bartonbrook engaged in confined collection activities from the Impacted Consumers which were directly related to the operation of a business other than that of a collection agency.

96.     Upon information and belief, Bartonbrook's collection activities included willfully

inaccurate, misleading, untrue, and deceptive statements or claims in its communications with the Impacted Consumers, including:

A. In paragraph 3 of its lease agreements with Impacted Consumers, Bartonbrook falsely claimed it had the legal right to use the Impacted Consumers' security deposits for "… **fees and costs of services that are the responsibility of the Tenant and not paid by Tenant.**"

B. In paragraph 9 of its lease agreements with Impacted Consumers, Bartonbrook falsely claimed it had the legal right to use the Impacted Consumers' security deposits for "**late fees**" and "**bad check**" fees.

C. In its notices of damages to Impacted Consumers, Bartonbrook falsely claimed that, in accordance with "**the Security Deposit Law**", it had the legal right to deduct charges from the Impacted Consumers' security deposits for improper purposes, including late payment fees, returned check fees, unreturned key fees, cleaning costs, labor, tire replacement, furniture removal, parking passes, dumpsters, trash removal, security guards for football games, citations, fire alarms, and subletting.

91.    Upon information and belief, Bartonbrook collected more than $2.4 million from the Impacted Consumers by making willfully inaccurate, misleading, untrue, and deceptive statements or claims in its communications with the Impacted Consumers.

92.    The class of Impacted Consumers from whom Bartonbrook has wrongfully collected alleged debts by making willfully inaccurate, misleading, untrue, and deceptive statements or claims in its communications with the Impacted Consumers is so numerous that joinder of all members is impractical.

93.    There are questions of law and fact common to members of the class that

predominate over questions affecting only individual members.

94.     Mr. Schleuning' claims against Bartonbrook are typical of the claims of the class.

95.     Mr. Schleuning will fairly and adequately assert and protect the interests of the class having competent counsel to represent them.

96.     The maintenance of the claims as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

WHEREFORE, on Count 12, pursuant to MCL 445.257(2), Mr. Schleuning on his own behalf and the class represented, asks this Honorable Court to certify the class represented, order that notice be provided to class members, and award a money judgment equal to the amount of the actual damages incurred by the Impacted Consumers as the result of Bartonbrook including willfully inaccurate, misleading, untrue, and deceptive statements or claims in its communications to collect alleged debts from the Impacted Consumers, and to assess a civil fine against Bartonbrook for not less than 3 times the actual damages incurred by the Impacted Consumers, together with reasonable attorney's fees and costs.

## COUNT 13
## REGULATION OF COLLECTION PRACTICES ACT – CLASS ACTION CLAIM #5
## MISREPRESENTING TO CONSUMERS
## THE LEGAL RIGHTS OF THE CREDITOR

97.     Plaintiff incorporates the above paragraphs as though fully restated herein.

98.     Section 2 of the RCPA [MCL 445.252] provides, in pertinent part, that **"A regulated person shall not commit 1 or more of the following acts: … (f) misrepresenting in a communication with a debtor … (ii) the legal rights of the creditor or debtor …"**

99.     Upon information and belief, in its communications with the Impacted Consumers, Bartonbrook misrepresented its legal rights to use the Impacted Consumers' security deposits for improper purposes, including:

A. In paragraph 3 of its lease agreements with Impacted Consumers, Bartonbrook falsely claimed it had the legal right to use the Impacted Consumers' security deposits for "… **fees and costs of services that are the responsibility of the Tenant and not paid by Tenant.**"

B. In paragraph 9 of its lease agreements with Impacted Consumers, Bartonbrook falsely claimed it had the legal right to use the Impacted Consumers' security deposits for "**late fees**" and "**bad check**" fees.

C. In its notices of damages to Impacted Consumers, Bartonbrook falsely claimed that, in accordance with "**the Security Deposit Law**", it had the legal right to deduct charges from the Impacted Consumers' security deposits for improper purposes, including late payment fees, returned check fees, unreturned key fees, cleaning costs, labor, tire replacement, furniture removal, parking passes, dumpsters, trash removal, security guards for football games, citations, fire alarms, and subletting.

99.    Upon information and belief, Bartonbrook has collected more than $2.4 million from the Impacted Consumers by misrepresenting its legal rights to use the Impacted Consumers' security deposits for improper purposes.

100.    The class of Impacted Consumers from whom Bartonbrook has wrongfully collected alleged debts by misrepresenting its legal rights to use the Impacted Consumers' security deposits for improper purposes is so numerous that joinder of all members is impractical.

101.    There are questions of law and fact common to members of the class that predominate over questions affecting only individual members.

102.    Mr. Schleuning' claims against Bartonbrook are typical of the claims of the class.

103.    Mr. Schleuning will fairly and adequately assert and protect the interests of the class

having competent counsel to represent them.

104.    The maintenance of the claims as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

WHEREFORE, on Count 13, pursuant to MCL 445.257(2), Mr. Schleuning on his own behalf and the class represented, asks this Honorable Court to certify the class represented, order that notice be provided to class members, and award a money judgment equal to the amount of the actual damages incurred by the Impacted Consumers as the result of Bartonbrook misrepresenting its legal rights to use the Impacted Consumers' security deposits for improper purposes in its communications to collect alleged debts from the Impacted Consumers, and to assess a civil fine against Bartonbrook for not less than 3 times the actual damages incurred by the Impacted Consumers, together with reasonable attorney's fees and costs.

**COUNT 14**
**MICHIGAN CONSUMER PROTECTION ACT – CLASS ACTION CLAIM #6:**
**COLLECTING DEBTS FROM CONSUMERS BY**
**CAUSING A PROBABILITY OF CONFUSION AS TO LEGAL RIGHTS**
**TO RETAIN AND CONVERT SECURITY DEPOSITS**

105.    Plaintiff incorporates the above paragraphs as though fully restated herein.

106.    Subsection 4 of Section 11 of the MCPA [MCL 445.911(4)] provides, in pertinent part, that **"… a person who suffers a loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by any of the following: (a) A method, act, or practice in trade or commerce defined as unlawful under section 3.**"

107.    Subsection (n) of subsection 1 of Section 3 of the MCPA [MCL 445.903(1)(n)] provides, in pertinent part, that unfair, unconscionable, or deceptive methods, acts or practices are defined to include **"(c)ausing a probability of confusion or of misunderstanding as to the legal**

**rights, obligations, or remedies of a party to a transaction".**

108.    Upon information and belief, to collect debts allegedly owed by more than 1,000 Impacted Consumers over the last 6 years, Bartonbrook engaged in unfair, unconscionable, and deceptive acts and practices by causing a probability of confusion or of misunderstanding as to Bartonbrook's legal rights to retain and convert the Impacted Consumers' security deposits for its own use.

109.    Upon information and belief, Bartonbrook caused a probability of confusion or misunderstanding as to its legal rights to retain and convert the Impacted Consumers' security deposits for its own use by making false claims in its communications with the Impacted Consumers, including:

A.    In paragraph 3 of its lease agreements with Impacted Consumers, Bartonbrook falsely claimed it had the legal right to use the Impacted Consumers' security deposits for "… **fees and costs of services that are the responsibility of the Tenant and not paid by Tenant.**"

B.    In paragraph 9 of its lease agreements with Impacted Consumers, Bartonbrook falsely claimed it had the legal right to use the Impacted Consumers' security deposits for "**late fees**" and "**bad check**" fees.

C.    In its notices of damages to Impacted Consumers, Bartonbrook falsely claimed that, in accordance with "**the Security Deposit Law**", it had the legal right to deduct charges from the Impacted Consumers' security deposits for improper purposes, including late payment fees, returned check fees, unreturned key fees, cleaning costs, labor, tire replacement, furniture removal, parking passes, dumpsters, trash removal, security guards for football games, citations, fire alarms, and subletting.

24

109.     Bartonbrook also caused a probability of confusion or misunderstanding as to its legal rights to retain and convert the Impacted Consumers' security deposits for its own use by wrongfully retaining and converting the Impacted Consumers' security deposits for its own use.

110.     Upon information and belief, the Impacted Consumers suffered the loss of their security deposits totaling more than $2.4 million as the result of Bartonbrook unlawfully collecting alleged debts from them by causing a probability of confusion or misunderstanding as to its legal rights to retain and convert the Impacted Consumers' security deposit for its own use.

111.     The class of Impacted Consumers from whom Bartonbrook has unlawfully collected alleged debts by causing a probability of confusion or misunderstanding as to its legal rights to retain and convert the Impacted Consumers' security deposit for its own use is so numerous that joinder of all members is impractical.

112.     There are questions of law and fact common to members of the class that predominate over questions affecting only individual members.

113.     Mr. Schleuning' claims against Bartonbrook are typical of the claims of the class.

114.     Mr. Schleuning will fairly and adequately assert and protect the interests of the class having competent counsel to represent them.

115.     The maintenance of the claims as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

WHEREFORE, on Count 14, pursuant to MCL 445.911(4), Mr. Schleuning on his own behalf and the class represented, asks this Honorable Court to certify the class represented, order that notice be provided to class members, and award a money judgment equal to all actual damages incurred by the Impacted Consumers as the result of Bartonbrook's unfair, unconscionable, and deceptive acts practice of collecting debts from Impacted Consumers by causing a probability of

confusion or of misunderstanding as to Bartonbrook's legal rights to retain and convert security deposits for its own use.

<u>**COUNT 15**</u>
<u>**MICHIGAN CONSUMER PROTECTION ACT – CLASS ACTION CLAIM #7:**</u>
<u>**FAILING TO PROMPTLY RESTORE SECURITY DEPOSITS**</u>

116.    Plaintiff incorporates the above paragraphs as though fully restated herein.

117.    Subsection (u) of subsection 1 of Section 3 of the MCPA [MCL 445.903(1)(u)] provides, in pertinent part, that unfair, unconscionable, or deceptive methods, acts or practices are defined to include **"(f)ailing, in a consumer transaction that is… terminated in accordance with an agreement…to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment…"**

118.    Upon information and belief, Bartonbrook entered into lease agreements with the Impacted Consumers all of which were consumer transactions terminated in accordance with their terms.

119.    Upon information and belief, the Impacted Consumers were entitled to have their security deposits promptly restored upon termination of the lease agreements.

120.    Upon information and belief, Bartonbrook failed and refused to promptly restore the Impacted Consumers' security deposits.

121.    The Impacted Consumers suffered more than $2.4 million in losses of their security deposits as the result of Bartonbrook's failure and refusal to promptly restore their security deposits.

122.    The class of Impacted Consumers to whom Bartonbrook wrongfully failed to promptly restore their security deposits is so numerous that joinder of all members is impractical.

123.    There are questions of law and fact common to members of the class that

predominate over questions affecting only individual members.

124.     Mr. Schleuning' claims against Bartonbrook are typical of the claims of the class.

125.     Mr. Schleuning will fairly and adequately assert and protect the interests of the class having competent counsel to represent them.

126.     The maintenance of the claims as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

WHEREFORE, on Count 15, pursuant to MCL 445.911(4), Mr. Schleuning on his own behalf and the class represented, asks this Honorable Court to certify the class represented, order that notice be provided to class members, and award a money judgment equal to all actual damages incurred by the Impacted Consumers as the result of Bartonbrook's failure to promptly restore their security deposits.

### COUNT 16
### CONVERSION OF SECURITY DEPOSITS – CLASS ACTION CLAIM #8

127.     Plaintiff incorporates the above paragraphs as though fully restated herein.

128.     Section 2919a of the Revised Judicature Act [MCL 600.2919a] (hereinafter the RJA) provides, in pertinent part that **"(1) A person damaged as a result of … the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees: (a) Another person's stealing or embezzling property or converting property to the other person's own use …** (2) **The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise."**

129.     Section 5 of the LTRA [MCL 554.605] provides, in pertinent part, that "…**the security deposit is considered the lawful property of the tenant until the landlord establishes a right to the deposit or portions thereof**…"

130.     Upon information and belief, Bartonbrook had a duty under section 9 and section

13 of the LTRA [MCL 554.609, MCL 554.613] to promptly return security deposits to Impacted Consumers.

131.    Upon information and belief, Bartonbrook had a duty under subsection (u) of subsection 1 of section 3 of the MCPA [MCL 445.903(1)(u)] to promptly return the security deposit to Impacted Consumers.

132.    Upon information and belief, Bartonbrook failed and refused to promptly return the security deposit to Impacted Consumers.

133.    Instead of returning the security deposit to Impacted Consumers, Bartonbrook converted their security deposits for its own use.

134.    The class of Impacted Consumers from whom Bartonbrook wrongfully converted their security deposits for its own use is so numerous that joinder of all members is impractical.

135.    There are questions of law and fact common to members of the class that predominate over questions affecting only individual members.

136.    Mr. Schleuning' claims against Bartonbrook are typical of the claims of the class.

137.    Mr. Schleuning will fairly and adequately assert and protect the interests of the class having competent counsel to represent them.

138.    The maintenance of the claims as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

WHEREFORE, on Count 16, pursuant to MCL 600.2919(a), Mr. Schleuning on his own behalf and the class represented, asks this Honorable Court to certify the class represented, order that notice be provided to class members, and award a money judgment equal to three times the amount of the security deposits wrongfully converted by Bartonbrook, together with reasonable attorney's fees and costs.

Respectfully submitted,

HOOPER HATHAWAY, P.C.

Dated:  September 15, 2023          BY:    /s/ Oscar A. Rodriguez
                                          Oscar A. Rodriguez (P73413)
                                          126 South Main Street
                                          Ann Arbor, MI  48104
                                          (734) 662-4426
                                          orod@hooperhathaway.com
                                          Attorney for Plaintiff

# EXHIBIT 1

## RESIDENTIAL LEASE

| | | | | |
|---|---|---|---|---|
| **PREMISES:** | **808 Tappan #1-6**<br>Ann Arbor, MI 48104 | **TERM OF LEASE**: Beginning<br>Ending:5PM | | **September 1, 2019**<br>**August 20, 2020** |
| TOTAL RENT: | **$163,200.** | MONTHLY INSTALLMENT: | | **$13,600.** |
| SECURITY DEPOSIT: | **$20,400.** | PARKING FEE: | | 20 $ |
| MANAGEMENT FEE: | **$2,000.** | TOTAL MONTHLY AMOUNT: | | #13,900 $ |
| | **TENANT(S):** | | | |

| | |
|---|---|
| Thomas Searle<br>Sean Hurley | Jackson Schleuning<br>Maxwell Tendero |
| Conner Coan<br>Andrew Polis | Alexander Stamboulidis<br>Richard Sanna |
| Drew Pilat<br>Jackson Esterline | Jack Kornet<br>Thomas Swiderski |

**LANDLORD: Bartonbrook Investments, L.L.C.**
820 Hill St., Ann Arbor, MI 48104 (734) 665-5620

In Consideration of the mutual covenants herein stated, Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, for a private residential dwelling, the Premises above, together with the fixtures, furnishings and appliances belonging thereto, for the above Term. Tenant will pay the total rent for the Premises in the Monthly Installments described above.

UTILITIES PAID BY TENANT: ELECTRICITY ___X___ WATER ____X____ HEAT ___X____
COOKING GAS ___X____

## COVENANTS

### 1. RENT:

Tenant shall pay Landlord the amount of Total Rent as indicated above in the box titled <u>Total Rent</u>. Such Total Rent shall be paid in monthly installments as indicated above in the box titled <u>Monthly Installment</u>, on the twentieth (20th) day of each month. The monthly rent will be due and payable to landlord for the following month's occupancy (e.g., Rent due and payable on August 20th is for the month of September). Monthly Rent shall be payable to landlord in the form of <u>one</u> check (and please designate the address of the premises you are renting on the memo portion of the check). Landlord may require rent to be paid with certified funds or money orders. Rent is paid only when received by Landlord.

### 2. PLACE OF PAYMENT AND NOTICES:

Notices to Tenant shall be sent to the Premises. Payments of rent or other charges due from Tenant and notices to Landlord shall be delivered or sent to Bartonbrook Investments, L.L.C., 820 Hill Street, Ann Arbor, Michigan 48104. Notices required by this lease or by law shall be in writing. Notices that are mailed are deemed delivered to the other party on the next regular day for delivery of mail after being stamped with sufficient postage and deposited in a United States mailbox.

### 3. SECURITY DEPOSIT:

Tenant agrees to pay Landlord the sum indicated above in the box titled <u>Security Deposit</u> (not to exceed the equivalent of one and a half (1 and 1/2) months' rent) as a security deposit. Landlord is not obligated to apply this deposit to rent or other charges in arrears. Landlord may use this deposit for (a) actual damages that are the result of conduct not reasonably expected in the normal course of living in the dwelling unit; (b) past due rent and rent due for premature termination of this Lease, and (c) utility bills and other fees and cost of services that are the responsibility of the Tenant and not paid by Tenant. Tenant may be liable for damages

- I -

over and above the amount of the security deposit.

Return of security deposit: If only one person signs this lease as a Tenant, Landlord shall return the security deposit in a check or money order payable to that person. If more than one person signs this lease, Landlord and Tenants agree that the security deposit shall be returned as follows: The security deposit shall be returned in a check or money order payable to one person, chosen by the Tenants, who shall act as the agent and representative of all other persons who have signed this lease or acquired legal rights of occupancy under it in dividing the security deposit according to any shares the Tenants have agreed upon, and in remitting those shares to each person, Landlord shall not be responsible for the proper allocation or division of shares in this security deposit, nor for the assessment of individual liability for any charges against the security deposit made by Landlord, which shall be matters solely for the Tenants to agree upon.

   The security deposit will be deposited at
            Name of financial institution or surety: Bank of America
            Address:  S Main St Ann Arbor Mi 48104

**YOU MUST NOTIFY YOUR LANDLORD IN WRITING WITHIN 4 DAYS AFTER YOU MOVE OF A FORWARDING ADDRESS WHERE YOU CAN BE REACHED AND WHERE YOU WILL RECEIVE MAIL; OTHERWISE YOUR LANDLORD SHALL BE RELIEVED OF SENDING YOU AN ITEMIZED LIST OF DAMAGES AND THE PENALTIES ADHERENT TO THAT FAILURE.**

**4.  APPLICATION:**
Tenant's application and all representations contained therein are incorporated as part of this Lease. Tenant warrants that all the information contained in the application is true, and if any of said information is false, Landlord may terminate this Lease.

**5.  UTILITIES:**
Tenant will pay, in a timely manner; the utility costs checked in the above section titled <u>Utilities Paid by Tenant</u> and shall pay any penalties imposed by utility companies or authorities because of their late payment of original bills. Tenant shall pay Landlord a $20.00 late service charge for each bill Landlord receives for Utility Paid by Tenant.

**6.  HEAT:**
Tenant shall at all times maintain the temperature at a minimum of 60 degrees and shall be responsible for all damages resulting from failure to do so (e.g., frozen pipes).

**7.  APPLICATIONS OF MONEY FROM TENANT:**
Tenant is responsible for keeping him/herself and guarantors informed about the status of his/her account with Landlord. Money received by Landlord from Tenant shall be applied to Tenant's account in the following manner: first, to satisfy unpaid late fees, dishonored check fees, pet, key and other charges owed by Tenant; second, to maintenance and repair costs legally chargeable to Tenant; third, to outstanding legal fees and/or court costs legally chargeable to Tenant; fourth, to outstanding utility bills that are the responsibility of Tenant; fifth, to deposits or portions thereof due from Tenant; sixth to rent.

**8.  LATE FEES AND DISHONORED CHECKS:**
For each delinquency after the 10th day, an additional $50 shall be added by Tenant to each delinquent payment; e.g., $300 due on 20th and arrives on 4th $350 is due.  If late fee is not included with late Rent, Tenant agrees to allow landlord to deduct said late fee from the deposit at the conclusion of the lease term.  Tenant agrees that $25 will be subtracted from Tenant's deposit for each time Tenant issues landlord a bad check.

**9.  KEY CHARGE:**
Landlord may charge Tenant a reasonable amount for lost keys and lockouts.

**10.  USE OF THE PREMISES:**

The premises shall be occupied solely by the Tenant(s) who have signed this Lease or acquired legal rights of occupancy under it and for residential purposes only. Neither Tenant nor any person residing with or visiting Tenant shall suffer, perform or permit any act or practice that may damage the reputation of the Building or be injurious or disruptive to the Building and operation thereof, or be disturbing to other tenants, be illegal, immoral or increase the rate of insurance on the Building. Tenant shall be responsible for the conduct of all persons residing with, or visiting Tenant and shall pay for the repair or damage to the Premises caused by the Tenant and all persons residing with or visiting Tenant.

**11.  ACCESS:**

Subject to applicable law, Landlord shall have the right to enter the premises when unoccupied, and by reasonable advance notice when occupied, for inspection, repairs, or for showing the premises to others.

**12.  TENANT TO MAINTAIN:**

Tenant shall keep the Premises and the fixtures, furnishings and appliances therein in a clean, sightly and sanitary condition, and in good repair, and in accordance with any and all ordinances in. Tenant shall not cause or permit any waste, misuse or neglect to occur to the water, gas, utilities or any other portion of the Premises. In addition, Tenant shall not permit or allow any trash, rubbish or waste materials to accumulate or any flammable liquids or explosives to be stored upon such premises. In the event of any violation resulting in the imposition or assessment of any fines, costs or other penalties against Landlord, by any municipal or governmental authority, Tenant shall be solely responsible for all fines, costs and penalties, which shall be paid by the Tenant's succeeding monthly rental obligation.

**13.  NO IMPROVEMENTS OR ALTERATIONS:**

Tenant shall not make any improvements or alteration to the Premises nor install any appliances, locks, television cables, telephone lines, or other equipment or any kind without the prior written consent of Landlord in each instance. Landlord is not liable to reimburse Tenant for any improvements unless agreed in writing. All authorized improvements are the property of the Landlord.

**14.  REPAIR REQUESTS:**

Repairs may be performed only by Landlord or its agents. Tenant agrees not to hold Landlord responsible for failure to repair until tenant has notified Landlord of the need for repair in writing (email) and a reasonable amount of time has passed after such notice. Repairs necessitated by tenant or tenant's guests will be made by Landlord but paid for by the tenant with the next rental payment due after receipt of Landlord's request for payment. So that repairs maybe performed efficiently, Tenant agrees to submit any repair request on Landlord's website, www.bartonbrook.com.  It shall state in specific terms the repair requested. To facilitate a cooperative Landlord-Tenant relationship, Tenant agrees to provide: a) written notice if repair was not completed timely or if a repair is completed unsatisfactorily and b) reasonable opportunity for Landlord to perform the repair or to remedy the unsatisfactory repair.

**15.  PARKING:**

Parking, if part of the lease agreement, is charged at $50. per spot per month. Landlord assumes no responsibility for damaged cars or for blocked-in cars.  Tenant hereby agrees to keep area in front of dumpsters clear of cars on City trash pick-up day (Wednesday – except during weeks with holidays, then pick-up is on Thursday).  Cars may not be parked on the lawn of any building.  No parking for guests at any time.  Landlord will not pay any ticket charges for illegal parking.

**16.  STORAGE:**

No storage is included in this Lease. Landlord shall not be responsible for any loss or damage to Tenant's property which may be placed on or about the premise.

**17.  INSURANCE:**

Neither Landlord nor its agents are responsible for the theft, damage, loss or destruction or personal property of Tenant, their guests or invitees because of fire, water, acts or omissions of third parties or from any cause whatsoever, unless caused by Landlord's failure to perform  or negligent performance of a duty imposed by law. TENANTS ARE SPECIFICALLY ENCOURAGED TO INSURE THEIR PERSONAL PROPERTY.

**18.  HOLD HARMLESS:**

Tenants agree for themselves, their heirs and personal representatives, to hold harmless Landlord from all damages, loss, including lost rents, or liability that results from or that may arise out of Tenant's negligent or illegal use or intentional misuse of the Premises, including the common areas. In the event of a claim against Landlord's insurance resulting from the acts or omissions of Tenant, their sub-tenants, guests or party crashers, Tenant will reimburse Landlord for its insurance deductible up to $1,000.

**19. SURRENDER OF PREMISES AND RETURN OF POSSESSION:**
At the termination of this Lease, Tenant (s) agree to return the rental unit and all furnishings to Landlord in the same condition as when taken, reasonable wear and tear and damage by the elements expected. Tenant shall yield and surrender immediate possession to the Landlord, and deliver all keys to the Landlord. No hold-over tenancy of any type or character shall be created and Tenant shall be deemed to be a trespasser subject to immediate eviction. In the further event Tenant fails to vacate the premises upon expiration of this Lease, Tenant shall pay Landlord a sum equal to 150% of Tenant's then current monthly rent obligation until Tenant vacates, and the actual damages incurred by Landlord due to Tenant's failure to vacate including but not limited to lost rents from future tenants of Landlord unable to occupy the premises, court costs and reasonable attorney fees.

**20. AMENDMENT:**
This Lease may be amended in writing only, signed by all parties.

**21. CAPTIONS:**
Paragraph captions are solely to assist with identification. They are of no legal significance.

**22. WAIVER:**
Failure by Landlord to enforce a provision of this Lease on one or more occasions is not a continuing waiver of Landlord's right to enforce the provision.

**23. SEVERABILITY:**
A court ruling that a clause of this Lease is invalid or parties' written agreement that they shall no longer observe one or more Lease provisions, shall not invalidate any other clauses of this Lease.

**24. SUCCESSORS BOUND:**
The heirs, successors, assigns and representatives of Landlord and Tenant shall be bound by the covenants of this Lease.

**25. USE AND QUIET ENJOYMENT:**
Tenant shall use the Premises for residential purposes only and refrain from conduct that disturbs the privacy of other tenants or interferes with the rights of other tenants to their rightful use, occupancy and quiet enjoyment of the Premises. No business of any sort shall be located in or conducted from the Premises. Tenant shall be entitled to the quiet enjoyment of the Premises through this Lease so long as they comply with its covenants.

**26. JOINT OBLIGATIONS:**
The words 'Landlord' and 'Tenant' when used in this Lease shall be construed to be plural if more than one person comprises either party to this Lease, and each shall be jointly and severally obligated to perform all of the terms and conditions of this Lease. If jointly and severally liable to the Landlord, each Tenant may be held responsible for the total amount of rent due for the premises.

**27. CO-SIGN AGREEMENT:**
Each Tenant will provide a guarantor acceptable to Landlord within seven (7) days of executing this Lease.

**28. POSSESSION:**
If Tenant is unable to occupy the premises at the time promised by reason of the holding over of the previous occupant or as a result of any cause beyond the control of Landlord, Landlord shall not be liable to Tenant. During the period Tenant is unable to occupy the premises rent shall not be due. If Landlord is unable to deliver possession within ten (10) days of the date occupancy was to commence, Landlord shall offer a comparable unit to Tenant for the duration of the lease if a comparable unit is available. The comparable unit shall be offered at the rental rate then in effect for such unit. If Tenant does not deliver written acceptance of the comparable unit to Landlord within seven (7) days after it is offered, either party may terminate this lease by written notice. If Landlord is unable to deliver possession within ten (10) days

and does not offer a comparable unit, as provided above, Tenant may terminate this lease by written notice to Landlord.

## 29. UNTENANTABILITY:

If the Premises become wholly untenantable during this Lease because of fire or other casualty not caused by the negligence or intentional misconduct of Tenant, their guest or invitees, Landlord may cancel this Lease by notifying Tenant in writing, and Tenant shall surrender the Premises to Landlord. If the Premises become partially untenantable for the same reasons, or wholly untenantable for the same reasons without Landlord canceling the Lease, Landlord shall repair the Premises with reasonable speed, and rent shall be abated in the same percentage the Premises are untenantable until repairs are substantially completed. If the Premises become partially or wholly untenantable during the Lease because of fire or other casualty caused by negligence or intentional misconduct of Tenant, their guests or invitees, rent shall not abate. Landlord is not liable to Tenant for the failure to repair unless and until Tenant has notified Landlord in writing of the need for repair and a reasonable amount of time to make the repair has passed thereafter.

## 30. SUBLETTING:

Only those listed herein as Tenant may occupy the Premises. Tenant shall not sublet the Premises, or any part thereof, without the prior written permission of Landlord.  Landlord shall not unreasonably deny Tenant's right to sublet premises, however, Landlord does not waive its right to receive prior written notice or its right to reject a subtenant for reasonable cause. Tenant hereby agrees to a $50 per Tenant charge for sublease during the lease term. Subletting by less than all of the Tenants in such rental unit requires the written consent of the Landlord and all other Tenants. A sublet approved by Landlord does not terminate Tenant's responsibility for payments due under this lease.

## 31. ABANDONMENT:

If at any time during this Lease Landlord believes in good faith that Tenant has abandoned the Premises and the current rent is unpaid, Landlord may re-enter the Premises and remove the remaining possessions of Tenant without liability thereof. Abandonment shall be conclusively presumed if rent is unpaid for fifteen days following the due date and either (1) a substantial portion of Tenant' possessions have been removed or (2) acquaintance of Tenant or other reliable sources indicate to Landlord that Tenant has left without the intention of re-occupying the Premises. If Tenant abandons the Premises or surrenders them at anytime and leaves personal property there, Landlord may dispose of it if Landlord chooses. Tenant shall reimburse Landlord for all costs incurred. This provision applies to all personal property except that for which Landlord and Tenant have made a specific, written agreement. No oral agreements may alter this provision

## 32.  FORFEITURE:

Default in any of the covenants of this Lease by Tenant, including any payment of rent and/or deposits required before possession constitutes breach of this contract and shall entitle Landlord to terminate the tenancy pursuant to the remedies provided herein. Any misrepresentation contained in the application to Lease, is forfeiture and shall entitle Landlord to terminate the tenancy pursuant to the remedies provided herein. From the date of execution, time is of the essence of this Lease. Venue to litigate any claim arising out of the tenancy created by this Lease shall be in the County of Washtenaw, State of Michigan.

## 33. DEFAULT:

(A) If Tenant fails to pay rent or any other sum required under this Lease when due, or if a health hazard or extensive and continuing physical injury to the premises exists, Landlord may terminate this Lease by providing seven (7) days written notice to the Tenant.

(B) This Lease may be terminated because the Tenant, a member of the Tenant's household, or other person      under the Tenants control has manufactured, delivered, possess with intent to deliver, or possessed a controlled substance on the premises. The Landlord may terminate the tenancy by giving the Tenant a written seven (7) day Notice to Quit. This section applies only if a report has been filed by the Landlord alleging that the person has unlawfully manufactured, delivered, possessed with intent to deliver, or possessed a controlled substance on the premises. For purposes of this subsection, "controlled substance" means a substance or a counterfeit substance classified Schedule 1, 2, or 3 pursuant to

333.7211-7216 of the Michigan Compiled Laws or successor provisions thereto.

(C) If Tenant breaches any other provision of this Lease, Landlord may terminate this Lease by providing one month's written notice to Tenant.

At the expiration of the applicable notice period, this Lease shall terminate and Landlord shall be entitled to possession of the premises and shall have the right to institute summary proceedings to evict Tenant in accord with applicable law. If Landlord re-enters the premises and terminates the tenancy of Tenant pursuant to this section, Landlord has the right and duty to mitigate damages, and Tenant shall be liable for the amount if any, by which the rent due under this Lease exceeds the rent collected after such termination.

After the service of any Notice, Commencement of any suit or Entry of Judgment for repossession of the premises for unpaid rent, Landlord may receive and collect any rent due and apply the same as and for use and occupancy of the premises, and the payment and receipt of such rent shall not affect nor serve as a waiver of Landlord's rights with respective to such Notice, Suit or Judgment. No receipt of money by the Landlord from the Tenants after the termination of this Lease shall reinstate, continue or extend the term, nor waive or affect any notice given by the Landlord to the Tenant prior to such receipt of money.

**34.  ENTIRE AGREEMENT:**

This Lease is the entire agreement between the parties. There are no other agreements that are a part of this Lease unless they have been specifically enumerated herein. Tenant's application to Lease is incorporated herein, and Tenant covenant that the information supplied in that application was and continues to be accurate.

**35.  LEGAL EXPENSES:**

Tenant shall pay all costs, expenses and attorneys fees which shall be incurred or expended by Landlord due to Tenant's breach of the covenants and agreements of this Lease, to the extent provided for by Court rules, statute or ordinance.

**36.  MEDIATION:**

If communication between the Tenant(s) and Landlord breaks down, a mediator can assist the parties in voluntarily reaching a mutually acceptable settlement of the issue(s) in dispute. All parties to this agreement agree that the University of Michigan Off-Campus Housing Program will assist in disputes involving University of Michigan students for which one of the parties requests assistance and: a) all parties will make a reasonable and good faith effort to settle such disputes through the program; b) any party to this lease may request mediation; c) program staff may enter and inspect the premises after notice to both parties and at reasonable times; d) this provision does not preclude other legal rights of the parties and referral to mediation shall require the written consent/agreement of Landlord and Tenant. The parties agree to keep the mediation proceedings confidential.

**37.  RULES AND REGULATIONS:**

Tenant shall observe and abide by the Rules and Regulation set forth in this Lease, and agrees to be bound by and comply with any further reasonable rules and regulations as may be established by the Landlord. Tenant shall pay for damage resulting from non-compliance.

**RULES AND REGULATIONS**

1. Tenant shall not change the locks without prior written consent of Landlord. No additional locks or other similar devices shall be attached to any door without Landlord's written consent.
2. Hallways and stairways shall not be obstructed or used for any purpose other than ingress and egress from the Building. Tenant shall not place or store any items on porches, in hallways or in any common areas of the premise.
3. Bathrooms shall not be used for any purpose other than that for which they are designed and no rubbish, rags, sanitary napkins, or injurious items shall be placed in plumbing facilities or receptacles.
4. All garbage shall be securely wrapped and promptly placed in the garbage container.
5. Tenant shall not interfere in any manner with the heating or lighting or other fixtures in the Building nor run extension cords or electrical appliances in violation of Building Code.
6. Right of Access to Show Apartments to Prospective Tenant and Purchasers: Landlord shall have the right to show the Apartment to all prospective Tenant and purchasers and any of Landlord's other invitees in accordance with local statutes and/or ordinances. Tenant shall not interfere with Landlord's efforts to lease the Premises and Tenant shall be liable for any damage caused by breach of this provision.
7. Landlord has the right to bar individuals from the Premises. Tenant must inform their guests and party crashers of all Lease provisions regarding use of the Premises and all rules and regulations. If these provisions are violated by their guests or party crashers, they may be barred and/or arrested for criminal trespassing, after they have received a barred notice and then have been placed on a barred list by Landlord, If Tenant violates the Lease or any of the rules and regulations it is grounds for termination of tenancy.
8. Light bulbs will be provided by Landlord at the beginning of the Lease term. Tenant is responsible for replacing light bulbs throughout the Lease term as necessary so that upon surrendering possession to the Landlord, all fixtures are properly equipped.
9. Attic and storage areas shall not be used for sleeping per city code.
10. Tenant shall not prop open or cause to be unlocked entry or any doors to the Building.
11. Tenant shall not go out onto or store possessions on any roof or fire escape.
12. Tenant will use picture hangers and not use gum, glue, tape or adhesive.
13. Tenant will not take furniture outside of the unit. Tenant's requests to have furniture removed from unit shall be at Landlord's discretion and subject to charge.
14. Tenant agrees not to abuse or mistreat laundry areas.  Tenant should contact Landlord on its website www.bartonbrook.com for repairs.
15. No lofts, waterbeds or sofa beds are allowed in the Premises at any time. Tenant will pay all costs of violation as determined by Landlord.
16. No pets are allowed in the Premise at any time. Tenant will not keep, allow about, feed or groom inside or outside the Premises any animal or pet, including fish and birds, even on a temporary basis Tenant will pay $100.00 for a first violation, $250.00 for a second violation and $500.00 for a third and each subsequent violation, plus at additional sums resulting from non-compliance. All such charges are due immediately upon notification. After a violation, Tenant will allow Landlord to re-inspect unit.
17. Tenant will practice good housekeeping to prevent insects, pests and vermin and is responsible for exterminator services required because of Tenant's housekeeping practices.
18. Tenant will not disarm or remove batteries from smoke detector. Tenant will inform Landlord of malfunction and will replace batteries necessary so that the unit is equipped with an operable smoke detector throughout the Lease term.
19. Tenant is responsible for maintaining the carpet, including vacuuming as necessary.
20. Parking is not allowed on the lawn at any time.
21. Smoking and the use of candles are prohibited.

22. No Couches or Barbeques allowed outside anywhere on premises at any time.
23. Tenant is responsible for plunging toilets. There will be a minimum charge of $65.00 if maintenance is called out to plunge a toilet.
24. Tenant will pay a $100.00 minimum lockout fee for any lockouts that occur between the hours of 5:00 p.m. and 12:00 a.m., Monday through Friday, and between the hours of 9:00 a.m. and 12:00 a.m. on Saturday and Sunday. No lockout service is offered between the hours of 12:00 a.m. and 9:00 a.m
25. NO Real Christmas trees are allowed.
26. Tenant understands parking lot and outdoor common areas shall be exclusively used for parking and other lawful activities. No activities shall be permitted which would be considered or deemed to be a nuisance under state or local law. Tenant agrees to only use fire escapes for their intended use, not as an entrance/exit, and agree not to be on roofs, roof over-hangs, areas above porches or any area deemed unsafe.
27. No organized gathering of twenty (20) or more individuals, or the open possession or consumption of alcohol shall be permitted in the parking areas or other outdoor common areas without prior written consent of Landlord. A $250 fee, in addition to any costs associated with trash violation fees, will be billed to your house/apartment, or deducted from security deposit, for any type of cleanup if the areas are not cleaned up per Ann Arbor City ordinance.

**We understand the above Rules and Regulations and we agree to comply with these requests.**

**Additional Provisions:**

**CERTIFICATION OF ACCURACY:**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| Tenant | Soc. Sec. #: |
| Tenant | |
| Tenant | |
| Tenant | Soc. Sec. #: |
| Tenant | Soc. Sec. #: |
| Tenant | Soc. Sec. #: |
| Landlord | |

# EXHIBIT 2

**SECURITY DEPOSIT SETTLEMENT**
(Two copies)

Re: Property _ROP Tappan_

Dear _Jackson Schleining     Tom Schnle, Sean Horley, Connre Conn, Andrew Polis-New P.tat_
_Jackson Estrline, Max Tenderer, Alex Stambaulicic, Richard Sasha, Jack Karret, Tom Swinderski_
Tenant

In accordance with Section 9 of the Security Deposit Law, Act 348 of the Public Acts of 1972, which provides, "In case of damage to the rental unit or other obligation against the security deposit, the Landlord shall mail to the Tenant, within 30 days after the termination of occupancy, an itemized list of damages claimed in Section 7 including the estimated cost of repair of each property damaged item and the amounts used as provided in Section 7 including the estimated cost of repair of each property damaged item and the amounts and basis on which he intends to assess the Tenant." A review of our records and an inspection of the above named property recently vacated by you disclosed the following;

Amount of Security Deposit $ _20,400 —_

| Room | Identification of Item and Description of Damages | Estimated Cost of Repair |
|---|---|---|
| | _DTE- Apt # 2_ | # _99.53_ |
| | _DTE- Apt # 1_ | # _6.89_ |
| | _2019 Football Security_ | # _556.89_ |
| | _Trash ticket_ | # _260.00_ |
| | _NSF check return - Max Tender_ | # _25.00_ |
| | _Sean Horley- unreturned parking permit_ | # _25.00_ |
| | _Trash Apt & dumpster #_ | # _1090 —_ |

Subtotal of Property Damage: $ _2003.29_

Unpaid Rent from _A_ to _____  $ _6,222.24_

Other _& late fees_     # _400 —_

The basis on which we intend to assess you is as follows:
the total of property damage, unpaid rent and utilities.     $ _8625.53_

Difference between damages claimed and amount of security
deposit. Check for which is enclosed.     $ _11,774.47_

The law also states in Section 9:

"YOU MUST RESPOND TO THIS NOTICE BY MAIL WITHIN 7 DAYS AFTER RECEIPT OF SAME, OTHERWISE YOU WILL FORFEIT THE AMOUNT CLAIMED FOR DAMAGES."

Please address all correspondence to the following:

BARTONBROOK PROPERTIES
By: 820 HILL ST.
ANN ARBOR, MI 48104
734-555-5020

Attn: _Michelle Parkes_
(name of manager or owner)

Very truly yours,

_____
Manager or owner

Date Sent or Given to Tenant _4.15.2020_