## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JACKSON SCHLEUNING, on behalf of
himself and other similarly situated,

                                        Case No.: 23-cv-12521

     Plaintiff,                    Hon. Mark A. Goldsmith

vs.

BARTONBROOK INVESTMENTS, LLC,
and BARTONBROOK PROPERTIES, LLC

     Defendants.

## FIRST AMENDED
## CLASS ACTION COMPLAINT

Plaintiff, Jackson Schleuning ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, hereby brings this Class Action Complaint against the Defendants, and states as follows:

## INTRODUCTION

1.     Plaintiff brings this action on behalf of himself and a class of similarly situated current and former tenants of Defendants[1] arising from the general practice of deducting (and thereafter converting) portions of the tenants' security deposit in

---

[1] While the security deposit settlements at issue in this case only reflect "Bartonbrook Properties" as the "owner" of the property at issue, some of the leases at issue mention the names of the other entities. Plaintiff's position is that Defendant Bartonbrook Investments, LLC and Defendant Bartonbrook Properties, LLC are the landlord/property manager for the properties involved.

violation of the Michigan Landlord Tenant Relations Act, MCL 554.601, et seq. ("LTRA").

2.    Based on the records provided by Defendants (which are admittedly incomplete) Plaintiff estimates that these unlawful practices involved over 1500 tenants who entrusted Defendants with more than $3,000,000 in security deposits.

3.    According to Defendant's website, it "has over 25 rental properties in the Ann Arbor, University of Michigan area[2]."

4.    The LTRA expressly provides, at section 5, that "the security deposit is considered the lawful property of the tenant until the landlord establishes a right to the deposit or portions thereof…." MCL 554.605.

5.    Defendants employ a property wide practice whereby they violate Section 7 of the LTRA (MCL 554.607) by charging tenants for 1) cleaning fees ("Cleaning Fees"), 2) late rent fees ("Late Fees"), 3) non-sufficient funds fees ("NSF Fees"), 4) unreturned parking permit fees ("Permit Fees"), 5) football game security fees ("Football Security Fees'),[3] and 6) municipal tickets ("Ticket Fees[4]"). These fees will be referred to collectively as the "Improper Fees."

6.    *See* <u>Exhibit 2</u>, Plaintiffs' post-move out "Security Deposit Settlement"

---

[2] See https://www.bartonbrook.com/, accessed on November 3, 2023.
[3] There are other improper charges that members of the Class were subjected to, but Plaintiff was not.
[4] This includes trash tickets, parking tickets, and false fire alarm tickets.

statement for a list of the Improper Fees applied during his rental term.

7.    The Improper Fees violate Section 7 of the LTRA which provides in plain, clear, and simple language that:

> "A security deposit may be used only for the following purposes: (a) Reimburse the landlord for <u>actual damages</u> to the rental unit or any ancillary facility that are the direct result of conduct not reasonably expected in the normal course of habitation of a dwelling. (b) Pay the landlord for all rent in arrearage under the rental agreement, rent due for premature termination of the rental agreement by the tenant and for utility bills not paid by the tenant.

*See* MCL 554.607 (emphasis added). Consequently, a landlord such as the Defendants here, may not use a tenant's security deposit for any purposes other than those listed in above.

8.    In *Smolen v Dahlmann Apartments Ltd.,* 127 Mich. App. 108, (1983) the Michigan Court of Appeals interpreted the above statute to hold that retaining security deposits for "cleaning" violated the LTRA and the Michigan Consumer Protection Act. In construing Section 7 of the LTRA, the Court explained that "the [Michigan] Legislature could not have intended that a rental unit needing cleaning has suffered "damages" under the statute." *Id*., at 115 (internal quotes in original).

9.    The *Smolen* Court went on to explain the common and unlawful practice (which is also at issue here) as follows:

> "The [LTRA] Act is primarily aimed to protect the tenant from the landlord surreptitiously usurping substantial sums held to secure the performance of conditions under

the lease.

The misleading practice of landlords obtaining large security deposits while charging a lesser monthly rate than their competitors and then unilaterally withholding a good portion of this deposit for unsuspected reasons is halted by the Act [LTRA].

One such "misleading practice" was to retain security deposit funds for cleaning expenses under the guise of a reimbursement for "damages".

*Id.,* at 116.

10.     The practice employed by Defendants is evident on the face of the

Security Deposit Settlement issued to Plaintiff and his co-tenants:



4

(*See* Exhibit 2).

11.    Notably, the Defendants have used the same lease[5], and the same security deposit settlement illustrated above for all properties and all tenants for all time periods relevant in this case. Indeed, Exhibit 3 & 4, contain illustrative settlements and the lease used over the years.

12.    For their part, Defendants have agreed that the Improper Fees listed above, and subject to this lawsuit, are **not property damage**. For example, Michelle Prokes, Defendants Property Manager/Office Manager, was asked to explain the "trash out & dumpster fee" charge of $1,090 listed above. The exchange is provided below (*See* also, Exhibit 6, p 136):

```
 4        On the settlement, we have a line for trash out and
 5        dumpster fee, or just dumpster, for $1,090, do you see
 6        that?
 7    A   Yep.
 8    Q   And that is for, as we've discussed before, Ms. Richards
 9        determined that it was more than the normal cleaning, so
10        an additional charge was submitted and charged to the
11        security deposit?
12    A   From what I recall, that's correct.
```

13.    Ms. Prokes also agreed during her deposition that NSF Fees, late fees, sublet fees, fire alarm fees, parking permit fees are not "damages" *Id.* at pp. 132-135.

_____

[5] There may be some minor changes over the years, but the material terms of the lease at issue have remain unchanged for the relevant time period.

14.    In a separate deposition, Defendants' Assistant Office Manager, Tammy Moon, helped explain the basis for the "trash out & dumpster fee" and agreed it is not property damage:

```
5   A   I think via email, but I can't be positive of that.
6   Q   Okay.  So then back to the deposit settlement -- oh,
7       boy.  On Exhibit 8, there's a trash out and dumpster fee
8       of $1,090, do you see that?
9   A   Yes.
10  Q   Page 1839 again.  Similar to before, there was at the
11      end of the tenancy, there was additional cleaning that
12      required removal of trash and dumpsters that you charged
13      for this tenant in the same manner that you charged for
14      other houses, as well, correct?
15  A   Correct.
```

(*See* also, <u>Exhibit 7</u>, p. 92). Ms. Moon also confirmed, without equivocation, that NSF Fees, Parking Permit Fees, Football Security, and Late Fees are not "property damage":

```
                                                Page 94
1   Q   You would agree with me that the non-sufficient check
2       charges is not property damage, correct?
3   A   Correct.
4   Q   You would agree with me that charging for the parking
5       permit is not charging for property damage, correct?
6   A   Correct.
7   Q   And would you agree with me that taking the trash out,
8       though you don't call it cleaning, is not a property
9       damage issue?
10  A   Correct.
11  Q   It is not property damage, correct?
12  A   Correct.
13  Q   Football security, nothing is being damaged, right, that
14      you're correcting?  You're protecting kids, in your
15      estimation; is that correct?
16  A   Correct.
17  Q   And then you have under "other," eight late fees for
18      $400, do you see that?
19  A   I see that.
20  Q   You agree that that is not a property damage charge,
21      correct?
22  A   Correct.
```

*Id* at p. 94.

15.    Ms. Prokes and Ms. Moon, along with their boss John Padmos are responsible for all aspects of the Defendants' security deposit settlement process. Mr. Padmos has not yet been deposed, but Ms. Moon and Ms. Prokes have confirmed that Defendants employ a uniform process to deduct the Improper Fees that applies to all members of the Class.

16.    Ms. Prokes, Mr. Padmos, and Ms. Moon are the only administrative employees of Defendants.

17.    This action has been brought to recover the unlawfully withheld Improper Fees on behalf of the hundreds of tenants that have been financially injured by this uniform practice.  In Plaintiff's case, this is $2,356.87, exclusive of penalties, trebling, interest and attorney fees.

18.    As will also be explained below, the above practice violates the Michigan Consumer Protection Act, specifically MCL 445.903(1)(n) by "causing.. confusion or of misunderstanding of legal rights…" and subsection (u) by "[failing], in a consumer transaction which is * * * terminated in accordance with the terms of an agreement * * * to promptly restore to the person or persons entitled thereto any deposit * * *"

19.    Finally, Plaintiff and the Class also seek damages under Michigan's statutory conversion statute, MCL 600.2919a. As discussed above, the LTRA

provides that the security deposit is the property of the tenant unless the landlord complies with the specific statutory procedures. Therefore, retention of any portion of the security deposit in a manner that is inconsistent with the LTRA (e.g. MCL 554.607) constitutes statutory conversion.

## JURISDICTION

20.     This case was originally filed in the Washtenaw County Circuit Court (No. 23-001174-CP). Defendant sought removal of the case. (ECF No. 1). Plaintiff did not object.

21.     This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative class is expected to exceed $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed class that is comprised of over one hundred members, and because at least one of the members of the proposed class is a citizen of a different state than Defendant.

## VENUE

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants conduct substantial business activities within this District and Defendants maintain their principal place of business in this District.

## PARTIES

23.    Plaintiff is a citizen and resident of the State of Florida.

24.    The members of the putative class are residents of various states including states other than Michigan. The members of the putative class are, upon information and belief, primarily former college students who have since graduated and moved across the country.

25.    Defendant Bartonbrook Investment, LLC is a Michigan limited liability company with its principal place of business in Ann Arbor, Michigan.

26.    Defendant Bartonbrook Properties, LLC, while not formally registered, holds itself out as a Michigan limited liability company with its principal place of business in Ann Arbor, Michigan. *See,* for example, Exhibit 5.

## ADDITIONAL FACTUAL BACKGROUND

27.    On or about October 1, 2018, Plaintiff and eleven other tenants (hereinafter the "Tenants") entered into a residential lease agreement with Defendants to rent a multiple-unit dwelling located at 808 Tappan Street in Ann Arbor, Michigan ("Leased Premises") for a term of less than twelve months commencing on September 1, 2019 and ending on August 20, 2020 (the "Lease") (*See* Exhibit 1, which includes all of the documents provided by Defendants regarding the Lease relationship).

28.    Plaintiffs' Lease is identical in all material respects to the Lease that

Defendants entered into with other tenants. *See* Exhibit 3, which contains the uniform lease used by Defendants since at least February 6, 2014.

29.     Pursuant to the Lease, the Tenants paid Defendants a security deposit of twenty-thousand four-hundred dollars ($20,400).

30.     Paragraph 3 of the Lease provides, in pertinent part, that Tenants may select one person "who shall act as the agent and representative of all other persons who have signed this lease or acquired legal rights of occupancy under it."

31.     Plaintiff was the person chosen by the Tenants as the agent to represent himself and the other tenants regarding the security deposit and all other rights associated with the tenancy.

32.     In May of 2018, seventeen months before the Tenants took possession of the Leased Premises, Defendants required the Tenants to pay a security deposit of twenty-thousand four-hundred dollars ($20,400) and notified the Tenants that their security deposit would be deposited at Bank of America on South Main Street in Ann Arbor, Michigan. *See* Exhibit 1, p. 1.

33.     Defendants did not deposit the Tenants' security deposit at Bank of America.  Instead, upon information and belief, Defendants deposited the Tenants' security deposit at a different financial institution.

34.     Defendants violated Section 3 of the LTRA when they required the Tenants to pay a security deposit and failed to notify the Tenants of the financial

institution where the security deposit would be held.

35.     Because Defendants failed to notify the Tenants of the financial institution where their security deposit would be held, the Tenants were not required to notify Bartonbrook of their forwarding addresses, but the Tenants did so, nevertheless.

36.     When the Tenants took possession of the Leased Premises, Defendants did not make use of inventory checklists as required by subsection (1) of Section 8 of the LTRA.

37.     Defendants did not furnish the Tenants 2 blank copies of a commencement inventory checklist that included all items in the rental unit owned by the landlord as required by subsection (2) of Section 8 of the LTRA.

38.     Moreover, Defendants did not complete a termination inventory checklist listing all the damages it claimed were caused by the Tenants as required by subsection (5) of Section 8 of the LTRA.

39.     At the termination of the Tenants' occupancy, Defendants did not mail the Plaintiff an itemized list of damages that only included damages for which the security deposit may be used as required by Section 9 of the LTRA. Instead, Defendants mailed Plaintiff an itemized list of damages that included damages for which the security deposit may not be used, including claims for the Improper Fees. (See Exhibits 1-2).

40.    The practice of charging the Improper Fees is applicable to every property managed by Defendants.

41.    The practice follows the same pattern: Defendants issues a form called a Security Deposit Settlement approximately 30 days after  the end of the lease period, and the tenants' have moved out. Samples of that form are included as Exhibit 4, and Exhibit 2 contains the specific form issued to Plaintiff.

42.    The document, whether issued to Plaintiff or to other members of the Class, expressly provides that it is "an itemized list of damages claimed for which the security deposit may be used…" and then goes on to provide:

      (a) "Identification of item and description of Damages"

      (b) "Estimated Cost of Repair"

      (c) The "Subtotal of Property Damage"

      (d) "Other"

(*See* Exhibit 2 & Exhibit 4). In other words, the common form lists all of the damages that are being charged against the security deposit at end of the tenancy and after move-out.

43.    After the Improper Fees are tabulated, they are taken from the security deposit and then a check for the remainder is issued. In the case of Plaintiff, the remainder was $11,774.47. (*See* Exhibit 2).

44.    Again, this process is the same for all of Defendants' tenants that have

leased from Defendants since at least 2016.

45.     Defendants' unlawful conduct has been widespread, repeated and consistent.

## CLASS ACTION ALLEGATIONS

46.     <u>Description of the Class</u>: Plaintiff brings this class action on behalf of himself and 6 classes of persons ("the Classes") pursuant to FRCP 23. The Classes are defined as follows:

> a.  All tenants who, during the applicable statute of limitations, were charged Cleaning Fees against their security deposit (the "<u>Cleaning Fees Class</u>").
>
> b.  All tenants who, during the applicable statute of limitations, were charged Late Fees against their security deposit (the "<u>Late Fees Class</u>").
>
> c.  All tenants who, during the applicable statute of limitations, were charged NSF Fees against their security deposit (the "<u>NSF Fees Class</u>").
>
> d.  All tenants who, during the applicable statute of limitations, were charged Parking Permit Fees against their security deposit (the "<u>Permit Fees Class</u>").
>
> e.  All tenants who, during the applicable statute of limitations,

were charged Football Security Fees against their security deposit (the "Football Security Fees Class").

f.  All tenants who, during the applicable statute of limitations, were charged Ticket Fees against their security deposit (the "Ticket Fees Class").

47.   Plaintiff reserves the right to modify or amend the definition of the Classes as this litigation proceeds.

48.   This action is properly maintainable as a class action.

49.   The Classes consists of more than 1000 members, such that joinder of all Class members is impracticable.

50.   There are questions of law and fact that are common to the Class members that relate to Defendants' practice of charging the above described Improper Fees against their tenants' security deposits.

51.   The claims of the Plaintiff are typical of the claims of the proposed Classes because they are based on the same contract documents and legal theories, and Plaintiff has no interests that are antagonistic to the interests of the Class members.

52.   Plaintiff is an adequate representative of the Class and has retained competent legal counsel experienced in class actions and complex litigation.

53.     The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on the Defendants' tenant-wide policy of improperly charging fees against security deposits.

54.     The predominant question of law and fact in this litigation includes, but is not limited to, whether Defendant wrongfully imposed one or more of the above-listed Improper Fees against a given tenant's security deposit.

55.     Other questions of law and fact common to the Class include the proper method or methods by which to measure damages.

56.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds (or even more than 1,000) of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts.

57.     Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the

claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.

58.     In addition, without a class action, it is likely that many members of the Class will remain unaware of Defendants' conduct and the claims they may possess.

59.     It appears that other persons who fall within the Class definitions set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

60.     This proposed class action does not present any unique management difficulties.

**COUNT I**
**LANDLORD AND TENANT RELATIONSHIPS ACT**
**USING SECURITY DEPOSIT FOR IMPROPER PURPOSES**
**(On Behalf of Plaintiff and the Classes)**

61.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

62.     Section 7 of the LTRA [MCL 554.607] provides, in pertinent part:

> **"A security deposit may only be used for the following purposes: (a) Reimburse the landlord for actual damages to the rental unit... that are the direct result of conduct not reasonably expected in the normal course of habitation of a dwelling; and (b) Pay the landlord for all rent in arrearage under the rental agreement, rent due for premature termination of the rental agreement by the tenant and for utility bills not paid by the tenant**."

63.     Importantly, a landlord's itemized list of damages may only include damages for which the security deposit may be used. *See Smolen v Dahlmann Apartments Ltd.,* 127 Mich. App. 108, 118 (1983*).*

16

64. As evidenced by Defendants' improper notice of damages (Exhibit 2), and Defendants' admissions as discussed above, the Tenants were charged the Improper Fees, none of which are permissible under Section 7 of the LTRA.

65. Specifically, Defendants applied the Tenants' security deposit to satisfy debts it claimed the Tenants owed for $400 in "unpaid late fees", $1090 for "trash out and dumpster" charges, $556.87 for "2019 Football Security", $260 for "trash ticket", $25 for "NSF fee", and $25 for "unreturned parking permit," all of which have been previously referred to as Improper Fees.

66. The members of the putative Class were subjected to the same exact improper conduct. See examples at Exhibit 4.

67. All Leases at issue for the Class are materially identical because Defendants found efficiency in using a form lease.

68. Plaintiff and members of the Class have sustained damages as a result of Defendants' violations.

**COUNT II**
**CONVERSION UNDER MCL 600.2919A**
**(On Behalf of Plaintiff and the Classes)**

69. Plaintiff realleges and incorporates all previous paragraphs herein.

70. Plaintiff and members of the classes entrusted money to be held by Defendants.

71. Section 2919a of the Revised Judicature Act [MCL 600.2919a]

(hereinafter the RJA) provides, in pertinent part:

> **"(1) A person damaged as a result of … the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees: (a) Another person's stealing or embezzling property or converting property to the other person's own use …** (2) **The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise**."

72.     Section 5 of the LTRA [MCL 554.605] provides, in pertinent part:

> "…**the security deposit is considered the lawful property of the tenant until the landlord establishes a right to the deposit or portions thereof**…"

73.     Defendants had a duty under section 9 and section 13 of the LTRA [MCL 554.609, MCL 554.613] to promptly return security deposits to Plaintiff and the members of the Class.

74.     Defendants had a duty under subsection (u) of subsection 1 of section 3 of the MCPA [MCL 445.903(1)(u)] to promptly return the security deposit to Plaintiff and the members of the Class.

75.     Defendants failed and refused to promptly return the security deposit to Plaintiff and the members of the Class as required by the LTRA and MCPA when they withheld the Improper Fees.

76.     Instead of returning the security deposit to Plaintiff and members of the Class, Defendants converted their security deposits, in the amount of the Improper Fees, for Defendants' own use. Specifically, Improper Fees retained from security

deposits were converted to Defendants ledgers and bank accounts.

77.     After the Improper Fees were taken, Plaintiff and members of the class

no longer had use of the same.

78.     Defendants had and continue to have use of the Improper Fees and

continue to exercise dominion and control of the same.

79.     The security deposits held by Defendants were held in identifiable

accounts and were still the property of Plaintiff and the class members at the time of

conversion.

80.     Plaintiff and the members of the class were harmed, continue to be

harmed, and are entitled to all the remedies described in MCL 600.2919a.

**COUNT III**
**MICHIGAN CONSUMER PROTECTION ACT –**
**COLLECTING DEBTS FROM CONSUMERS BY CAUSING A**
**PROBABILITY OF CONFUSION AS TO LEGAL RIGHTS TO RETAIN**
**AND CONVERT SECURITY DEPOSITS**
**(On Behalf of Plaintiff and the Classes)**

81.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

82.     The Michigan Consumer Protection Act [MCL 445.901 et seq]

(hereinafter the MCPA) is a remedial statute that requires the disclosure,

maintenance, and verification of certain information for consumer protection.

83.     Subsection (n) of subsection 1 of Section 3 of the MCPA [MCL

445.903(1)(n)] provides, in pertinent part, that unfair, unconscionable, or deceptive

methods, acts or practices in the conduct of trade or commerce are unlawful and

defined to include:

> **"(c)ausing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction".**

84.    To collect debts allegedly owed by the Plaintiff and other members of the Class, Defendants engaged in unfair, unconscionable, and deceptive acts and practices by causing a probability of confusion or of misunderstanding as to as to the legal rights, obligations, and remedies of the parties to the Lease.

85.    Defendants caused a probability of confusion or misunderstanding as to the legal rights, obligations, and remedies of the parties to the Lease by misrepresenting its statutory and contractual rights to use the class members' security deposit for purposes other than those permitted by the LTRA, including:

(a)    In paragraph 3 of the Lease, Defendants falsely represented that the Tenants (and class members) security deposit could be used for "… **fees and costs of services that are the responsibility of the Tenant and not paid by Tenant**" in addition to the purposes permitted by the LTRA.

(b)    In paragraph 9 of the Lease, Defendants falsely represented that the Tenants' (and class members) security deposit could be used for "**late fees**".

(c)    In its notice of damages, Defendants falsely represented that, in

accordance with "**the Security Deposit Law**", the Tenants' (and

class members) security deposit could be used for "late fees",

"trash out and dumpster" charges, "2019 Football Security",

"trash ticket", "NSF check return", and "unreturned parking

permit".

64. Defendants knew or should have known that their representations were

false.

65. Defendants made those false representations for the purpose of causing

the Tenants (and class members) to be confused about or misunderstand the legal

rights, obligations, and remedies of the parties to the Lease, and to prevent or

discourage the Tenants (and class members) from enforcing their legal rights or

pursuing their legal remedies.

66. The Tenants (and class members) reasonably relied upon Defendants'

false representations to their own detriment. Specifically, the Tenants (and class

members) did not take action to enforce their legal rights or pursue their legal

remedies because Defendants repeatedly represented that it was authorized by statute

and by contract to deduct fees and costs from their security deposit for purposes not

permitted by the LTRA.

67. If the Tenants (and class members) knew Defendants had falsely

represented their statutory and contractual rights to use the Tenants' (and class

members) security deposit, they would have taken action to enforce their legal rights or pursue their legal remedies.

68.    Because of Defendants' false representations, and the Tenants' (and class members) reasonable reliance thereon, the Tenants (and class members) suffered damages, which is that portion of their security deposit (Improper Fees) Defendants unlawfully retained and converted for their own use.

69.    In addition to their false representations, Defendants also caused a probability of confusion or misunderstanding as to the legal rights, obligations, and remedies of the parties to the lease by wrongfully retaining and converting a portion of the Tenants' (and class members) security deposit for their own use after falsely representing to the Tenants (and class members) that they had the statutory and contractual right to do so.

70.    Defendants' debt collection communications and conduct are not specifically authorized under any laws administered by any regulatory board or officer.

**COUNT IV**
**MICHIGAN CONSUMER PROTECTION ACT –**
**FAILING TO PROMPTLY RESTORE**
**THE TENANTS' SECURITY DEPOSIT**
**(On Behalf of Plaintiff and the Classes)**

86.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

87.    Subsection (u) of subsection 1 of Section 3 of the MCPA [MCL

445.903(1)(u)] provides, in pertinent part, that unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful and defined to include:

> **"(f)ailing, in a consumer transaction that is… terminated in accordance with an agreement…to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment…"**

71.     The Lease entered into by Plaintiff and the class members was a consumer transaction that was terminated in accordance with its terms.

72.     Upon termination of the Lease, the Tenants (and class members) were entitled to have their security deposit promptly restored as set forth in Section 9 and Section 13 of the LTRA. *See Smolen v Dahlmann Apartments Ltd.,* 127 Mich.App 108, 118 (1983) ("we hold that a landlord who retains part of a tenant's security deposit for cleaning violates the MCPA [MCL 445.903(1)(u)]."

73.     Defendants failed and refused to promptly restore the Tenants' (and class members) security deposit.

74.     Defendants cannot avail themselves of any of the exceptions under the MCPA, including MCL 445.904(1)(a).

75.     The Tenants (and class members) suffered the loss of a portion of their security deposit (in the amount of their respective Improper Fees) as the result of Defendants' failure and refusal to promptly restore their security deposit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class request judgment as follows:

a.      Certification for this matter to proceed as a class action;

b.      Restitution of all improperly taken Improper Fees from Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

c.      Actual damages in an amount according to proof;

d.      Three times the actual damages sustained, plus costs and reasonable attorneys' fees;

e.      Pre-judgment interest at the maximum rate permitted by applicable law;

f.      Costs and disbursements assessed by Plaintiff in connection with this action;

g.      Reasonable attorneys' fees pursuant to applicable law; and

h.      Such other relief as this Court deems just and proper.

Respectfully submitted,

HOOPER HATHAWAY, P.C.

Dated:    November 3, 2023    BY:   /s/ Oscar A. Rodriguez
Oscar A. Rodriguez (P73413)
126 South Main Street
Ann Arbor, MI  48104
(734) 662-4426
orod@hooperhathaway.com
Attorney for Plaintiff and Putative
Class Members

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Respectfully submitted,

HOOPER HATHAWAY, P.C.

Dated:      November 3, 2023

BY:   /s/ Oscar A. Rodriguez
Oscar A. Rodriguez (P73413)
126 South Main Street
Ann Arbor, MI  48104
(734) 662-4426
orod@hooperhathaway.com
Attorney for Plaintiff and Putative
Class Members

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Oscar A. Rodriguez*